# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

"John Doe" :

(Enter above the full name of the plaintiff in this action)

v. : Case No. **1:09CV222**

Procter and Gamble :

_____ : **J. DLOTT**
COMPLAINT UNDER **J. BLACK**
42 U.S.C. 2000e-5(f)(1)

(Enter the above full name of the defendant or :
defendants in this action)

## I. Parties

(In item A below, place your name in the first blank and place your present address and telephone number (or telephone number where you can be reached) where indicated in the following blanks.)

A. Name of Plaintiff "John Doe"

Address 5372 Heather Circle, Mason OH 45040

Telephone No. (315)-778-1429

Under 42 U.S.C. 2000e-5(f)(1) suit may only be "brought against the respondent named in the charge" of unlawful employment practice you filed with the Ohio Civil Rights Commission and/or the Equal Employment Opportunity Commission. ATTACH A COPY OF THE CHARGE YOU FILED WITH THE OHIO CIVIL RIGHTS COMMISSION AND/OR THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION TO THIS COMPLAINT. In item B below list the name and address of the employer against whom you filed the charge. In item C below, list the name and address of any other person(s) you named in the charge you filed with the Ohio Civil Rights Commission and/or the Equal Employment Opportunities Commission.

B. Defendant Procter and Gamble
(As named in the attached charge)
Address 8700 Mason Road, Mason, OH 45040

C. Additional defendants (as named in the attached charge):

_____

_____

_____

## II. The Court has jurisdiction under 42 U.S.C. §2000e-5(f)(1).

A. The date the notice of right to sue was issued by the Equal Employment Opportunity commission was **DEc 19 2008**.

B. The date you received the notice of right to sue was **DEc 29 2008 \***.

C. ATTACH A COPY OF THE NOTICE OF RIGHT TO SUE TO THIS COMPLAINT.

**\* Note: This is the first date that I read the letter because I was out of state for the holidays. Mail from the Indianapolis District Office generally takes 4 days.**

## III. Statement of Claim

The Equal Employment Opportunities Act provides, in part, that

(a) it shall be an unlawful employment practice for an employer --

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. §2000e-2(a)(1). Other unlawful employment practices are set out in 42 U.S.C. §2000e-2(a) through (d).

State here as briefly as possible the *facts* of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach an extra sheet if necessary.

Please reference the attached charge(s).

I reserve the right to modify documents as well as the right to "not comply" with any requests that place me in undue harm w/o penalty.

-2-

_____

_____

_____

_____

_____

_____

_____

_____

_____

## IV. Relief

*(State briefly exactly what you want the Court to do for you. Make no arguments. Cite no cases or statutes.)*

Full Relief

In addition, I want a fair and equitable form and a comparable level of access to resources (reference choice), as well as a person that assists in making well-informed, well-intentioned decisions.

_____
(Signature of Plaintiff)


I declare under penalty of perjury that the foregoing is true and correct.

18 March 09
(Date)

_____
(Signature of Plaintiff)

-3-

## DISMISSAL AND NOTICE OF RIGHTS

| To: "John Doe" | From: Indianapolis District Office |
|---|---|
| 5372 Heather Circle | 101 West Ohio St |
| Mason, OH 45040 | Suite 1900 |
| | Indianapolis, IN 46204 |

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| TBD | Patricia R. Wise, Acting Enforcement Supervisor | (317) 226-5596 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

Danny G. Harter, Director

DEC 19 2008 (Date Mailed)

Enclosures(s)

cc: Pamela Brown Bosley, Esq.
Legal Counsel
c/o The Gillette Company
Prudential Tower Building
42nd Floor
800 Boylston Street
Boston, MA 02199

Re: "John Doe" v. Procter & Gamble



# U.S. Equal Employment Opportunity Commission
## Indianapolis District Office

101 West Ohio St
Suite 1900
Indianapolis, IN 46204
(317) 226-5669
TTY (317) 226-5162
FAX (317) 226-7953

Charging Party: "John Doe"
EEOC Charge No.: TBD

October 23, 2008

Ms. Pamela Brown Bosley
Legal Counsel
PROCTER & GAMBLE
299 East Sixth Street
Cincinnati, OH 45202

Dear Ms. Brown Bosley:

This letter is to follow-up on our telephone conversations this afternoon and on October 21, 2008, as well as the emails exchanged regarding the above charge. In an effort to continue the investigation into the above charge, your organization was requested to submit information relevant to the subject charge of discrimination. The Commission is required by law to investigate charges filed with it, and the enclosed request for information does not necessarily represent the entire body of evidence which we need to obtain from your organization in order that a proper determination as to merits of the charge can be made.

The information will only be disclosed in accordance with 29 C.F.R. 1601.22, or otherwise made public if the charge results in litigation.

If you have any questions I can be reached at 317-271-6069, between the hours of 6:00 a.m. and 4:30 p.m., Eastern Time, Monday through Thursday. I will be in a meeting beginning at 2:00 p.m., on Wednesday, October 29, 2008; however, I am available that morning up until the meeting.

Your cooperation in this matter is appreciated.

Sincerely,

Sheryl Ann Turner
Federal Investigator

Response Deadline Date: November 6, 2008

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|
| | Ohio Civil Rights Commission | and EEOC |
| | State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| "John Doe" | (315)-778-1429 | TBD |

| Street Address | City, State and ZIP Code |
|---|---|
| 5372 Heather Circle, Mason, OH 45040 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| PROCTER & GAMBLE | 500 or More | (513) 622-0844 |

| Street Address | City, State and ZIP Code |
|---|---|
| 8700 Mason Road, Mason, OH 45040 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☒ OTHER (Specify below.)
Veteran Disability Status

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: UNK    Latest: 06-02-2008
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

### PAGE #1 of 6

**BACKGROUND ON PROCTER & GAMBLE AND GILLETTE**
1. Gillette's policy was to only respond to requests from the Top 10 (usually Top 7) customer teams [Wal-Mart, Target, Costco, Kroger, CVS, Walgreen's, etc.]. Thomas Williams, a former Gillette employee, not only refused to talk to customers beyond the Top 10 customer teams but also advised against it, because it was not aligned with Gillette policy. Delhaize is not a Top 10 customer team.
2. Procter & Gamble has a very poor history and track record of dealing with certain types of disabilities. Several managers have indicated that if the company wants to check someone out more closely, the company will have no problem obtaining and scrutinizing medical records. The company also has a poor track record with depositions.

**MY BACKGROUND**
1. I am a male; I believe I am a qualified individual with a disability as defined by the Americans with Disabilities Act. I was treated unfairly because of my gender and disability status.
2. Objective, verifiable, and irrefutable data, assuming similar access to resources (including training) and opportunities, suggests that I should be more efficient than the majority of Assistant and/or Brand Managers. I provided data such as IQ testing and GMAT information to the EEOC to validate this statement. In addition, two other points: first the Oral-B brand is extremely inefficient (supply chain complexities, integration), and second, in terms of leadership ability and potential, my training and experiences suggest that, as a frame of reference, I have more leadership potential than my former General Manager, Diane Dietz, who was several levels above me. The only "difference" was that she had "power" and I didn't.

**OVERALL ARGUMENT**
1. PROCTER & GAMBLE DISCRIMINATED
2. PROCTER & GAMBLE LACKS INTEGRITY
1. If I were either not male or Procter & Gamble employees did not leverage information regarding a disability against me (perceptions and associations), then I would not have experienced the adverse action that I experienced. If I were a female in Oral Care, then the company would have most likely bent over backwards to offer accommodation.
2. The personnel file should more or less function as the company's position statement. Accordingly, analysis of my personnel file shows numerous contradictions that a reasonable fact finder should conclude that the company's articulated reasons for termination do not hold merit. The EEOC should not permit the company to produce information "after the fact," blatantly attempt to deceive the EEOC, and "throw reasons out there and see what sticks." My file also suggests that P&G employees produced documents based on information they **knew** to be **false**.

3. Procter & Gamble is a flat organization where organizational structure does not always reflect how decisions are made. I had virtually no contact with Diane Dietz and Clark Reinhart. Accordingly, any decisions that they made were based off whatever other employees told them, whether true or untrue, biased or unbiased.

## FACTS ABOUT MY EXPERIENCES AT PROCTER & GAMBLE
### 1. PROCTER & GAMBLE DISCRIMINATED
### 2. PROCTER & GAMBLE LACKS INTEGRITY

1. Because Procter & Gamble employees believed that I was **discriminated** against, billing was coordinated under EAP rather than COBRA. I was not involved in this transaction. I have provided the EEOC with this billing information.
2. Diane Dietz was the person who made the decision to terminate me. People have allowed me to infer that Procter & Gamble employees (who had knowledge of my disability) sought to not only leverage that knowledge against me but also inform Diane Dietz so that she could do the same. Within approximately a week or two of my termination, Ms. Dietz "magically" left the company. Because the probability that the decision maker (of a termination) and the person getting terminated leave P&G at nearly the identical time is not correlated is significantly less than 1%, this raises the inference that I was discriminated against.
3. I observed Christine McGovern inappropriately touch Cesar Aguilera and then improperly state "Cesar is hot." Because Cesar is married with kids (as is Christine) and appeared to find this disturbing, he was flummoxed and did not know how to respond. Incidents such as this were common.
4. I observed Andrea Zahumensky make a comment to Dan Peterson that I found degrading and humiliating. Specifically, she stated that "Clark isn't into the Good Ole Boys thing like some of you" after she eavesdropped on a conversation where I told Dan that Fabian (an Assistant Director) agreed to have 1:1's with me.
5. Christine would have 2 hour lunches with Clark Reinhard. I had little to no contact with Clark, so it was easy for Christine and others to 'leverage' him – or basically manipulate this boy to get what they want so that they could increase their "power."
6. Thomas "the competition killer" (as he wrote on the excel sheet that I had to send out to the 'field') Williams would repeatedly tell me that Sally Schoen was a dyke and make other inappropriate comments. He also had several angry outbursts in front of members of the Go2MarketTeam such as Connie and Chuck.
7. Sally Schoen would start off the Go2Market team meetings (9:00AM) by making comments such as "when I first started it was a big deal that a women with 15 years could retire from Procter&Gamble" and "women had to meet in secrecy outside of work." It is unclear if Ms. Schoen or Ms. Susan Arnold were members of such groups.
8. Kelly Heaps, April Mills, Sara Field, and several other Assistant & Brand Managers in the category (as well as other categories) were apparently members of a "Good Ole Girls" club called Women who dine Together.
9. Fabian indicated that no members of his team would be terminated, in an attempt to allay concerns about the upcoming recession. He made these comments during team meetings in front of his entire team. Since I was on his team, I accepted his promise and relied on it. On May 30th, Chuck Walton made a similar promise.
10. Sara Field, Kelly Heaps, Mindy Barry, and Stacey Reherman (could be wrong with Stacey) were all reportedly promoted from Assistant Brand to Brand Manager within the past year. They are all in Oral Care.
11. Of the employees that Christine McGovern has managed in the past all of the males such as Fuad Hamza, Chris Campbell, myself, and Josh Ehrenfried (and others) have left the category or company (except Chris Murphy), whereas all of the females have stayed in the category and/or received a promotion such as Victoria Stroud, Sara Field, Karen Kernodle, Tiffany Bell, Mindy Barry, Kelly Heaps, Stacey Reherman, Gina Gates, Christine Peetz, Beth Dzeich, Tricia Lietz (with the only exception being Debbie Orth who sought opportunities elsewhere).
12. Christine McGovern has taken "short term disability" several times. Sara Field has also taken "short term disability" as has Gina Gates. This is a 'bond.' Taking disability leave for pregnancy tends to disrupt business operations.
13. The book *Fly Paper for Freaks*, written by Christine Peetz, my marketing specialist, shows a clear bias and contempt against men. I sent this book to my supervisor and suggested that Christine's judgment was impaired.
14. I provided the EEOC with a scorecard produced by Chuck Walton (Tom Williams replacement), the SCAE, which had every single project that I was responsible for listed in green, because it was either delivered against or on track to deliver results. This suggests not only an error in judgment by Christine McGovern but also a propensity for dishonesty.
15. The Pre-Placement Health Questionnaire assisted in creating an environment where several assumptions regarding my abilities and potentialities were made due to perceptions and associations of a disability. This form appears to have been signed by Human Resources. This form also served as a 'red flag' for management. In particular, my General Manager reportedly sought information on my disability.
16. I complained to several people about the unfair treatment that I was receiving; I made the causal link to a disability and/or gender. I even complained to my supervisor via e-mail in "P&G language" that I was getting treated like a "second class ABM."
17. Individuals who I had little to no contact with heard that I had disability condition x. As an employee, I never disclosed the nature of my disability to anyone until I realized this. As a result of these rumors, I was intentionally excluded from meetings and trainings that were necessary to perform my job.
18. On two occasions, I had to leave work early because the discrimination that I experienced was intolerable.

19. I was not given the resources to perform my job, despite asking for them. In fact, I was not even enabled to participate in training that was on my training plan. I feel as though I made several "good faith" efforts to request accommodation – after I knew that people had sought information on my disability.
20. The "language" used throughout my personnel file, along with e-mail correspondence, will show that the environment was intolerable.
21. Individuals whom I worked with used knowledge regarding my disability to bias and leverage other people within the organization against me. They created an environment where people whom I had little contact with had negative perceptions about my abilities and potentialities.
22. My Human Resources Manager gave a briefing to Oral Care that discussed disabilities. During the presentation, she indicated that people who had [insert certain types] of disabilities were drains on organizations [referring to inefficiencies] and very costly for organizations.
23. Sally Schoen made several comments that drew negative perceptions and associations to my name. These comments occurred in front of large groups and resulted in many people regarding and treating me as if I were disabled.
24. During a WMT call, disparaging comments (directed at me) showed how widespread discrimination was within the organization. Chuck Walton forcibly admonished those who were on the call.
25. Jokes were placed within close proximity of my desk area that depicted a person dealing with depression in a derogatory manner. This was one of many ways in which people drew negative associations to my name.

## ANALYSIS OF MY CHARGE
### 1. PROCTER & GAMBLE DISCRIMINATED
### 2. PROCTER & GAMBLE LACKS INTEGRITY

If the Procter & Gamble employee manual specifies that they must listen to both sides of a dispute, then this policy must be followed consistently - with terminations only taking place only after a fair hearing by both sides to the dispute. Separately, should this charge result in litigation, it is my understanding that internal thought processes are subject to discovery to establish thinking and motives (legal department, Diane Dietz, etc.). Briefly, I will make three points:

1. The data clearly shows that all of my immediate managers: Christine McGovern, Sally Schoen, and Diane Dietz, treated me less favorably than similarly situated female Assistant Brand Managers and Brand Managers. I experienced adverse action that I would not have experienced if I were not a male and/or regarded as disabled. Once individuals had knowledge of a disability, that served as a source of leverage, and only magnified the discrimination I was already experiencing because I was a male.
2. Analysis of e-mails and my personnel file suggests that my immediate supervisor, Christine McGovern, does not want to spend time with people with special needs because that limits her exposure opportunities and requires work. A comprehensive analysis would also clearly show that I was the one who repeatedly encouraged Ms. McGovern to do the "right thing" via e-mail, that I had a tenacious work ethic relative to my peers, and that she treated me unfavorably because of my gender and disability status.
3. I was treated the way that I was treated because of both my gender and perceptions and associations of a disability. This is a clear situation of subordinates attempting to bias and/or inappropriately leveraging one or more people who are in positions of power and influence. They did this in an attempt to increase their own status and power & influence with other groups that they perceive to be able to favorably impact their career progression.

## FACTS ABOUT EEOC INVESTIGATION
### 1. PROCTER & GAMBLE DISCRIMINATED
### 2. PROCTER & GAMBLE LACKS INTEGRITY

1. Admittedly, Procter & Gamble could only "win" the EEOC investigation by doing three things: 1) making false statements; 2) not allowing me fair & equitable access to resources; and/or 3) not allowing the investigator fair & equitable access to resources. In my situation, Procter & Gamble **did all three**. If Procter & Gamble did not lie and adhered to their purported values (allowed a fair & equitable investigation), then I would have "won" and they would have "lost" (which they could not have). The **only way** they could "win" was by attempting to deceive the EEOC and lie, which is exactly what Procter & Gamble did. Accordingly, I ask A.G. Lafley and his company to show not only me but also the EEOC the respect that we deserve, and to allow the EEOC to render the cause finding that they would have issued, if your company would have acted with **integrity** and in line with your **company values**.
2. I concede that investigations are imperfect, people forget, and misunderstandings occur. For instance, we may agree to disagree about what constitutes "a request for accommodation" or whether or not making a statement in "P&G language" that requires a small inference will pass EEOC and/or judicial scrutiny. Unfortunately, to my dismay, Procter & Gamble employee(s) **committed perjury**. Specifically, Clark Reinhard **knowingly lied** on his affidavit by stating that "On May 30th, 2008 Ms. McGovern and I met with [delete] to discuss the results..." Likewise, Christine McGovern **committed perjury** by stating "On May 30th, 2008 Mr. Reinhard and I met with [delete] to discuss the results..." **Perjury**, also known as **forswearing**, is the act of lying or making verifiably false statements on a material matter under oath or affirmation in a court of law or in **any of various sworn statements in writing**. It is important that the false statement be **material** to the case at hand - that it could affect the outcome of the case. It is not considered perjury, for example, to lie about one's age, unless that person's age is a key factor in proving the case. Since these statements are not only important in demonstrating **pretext (cover-up)** but also material to the case for other reasons, Clark Reinhard &

Christine McGovern should be found guilty of **perjury**. There was **never** even a meeting scheduled with them for May 30th. In fact, on May 30th I was at the BRIC, a separate facility from the Mason Business Center, receiving **praise** for my performance. Nearly the entire Go2Market Team was present. Clark, however, was not present at this daylong event. Please reference **Exhibit A**.

3. "Coaching" is a euphemism for "get rid of" or "terminate." In my situation, "coaching" was more or less a phrase used to refer to tacit discrimination (such as the e-mail that Clark sent me). If the EEOC were to conduct a thorough investigation, they would find numerous Gillette documents labeled "confidential" that not only support my assertions of tacit discrimination but also suggest guilt. In addition, another point is that after I told Michael Younger that I had a disability, a Brand Manager who "owns" the P&L statement, he indicated that I was a NOS deduct - or a similar term, to refer to the tax benefits the company was receiving. Analysis of financial statements should confirm this.

## ANALYSIS OF EEOC INVESTIGATION
### 1. PROCTER & GAMBLE DISCRIMINATED
### 2. PROCTER & GAMBLE LACKS INTEGRITY

The Medical History Form. To the "typical layperson" - or an estimated 95% of the population - this looks like just another form. However, this form is beyond "fishy." The form asks several questions that have no purpose whatsoever, except to more or less blackmail someone. Actually, to test a hypothesis, I took this form to a person who has a PHD in psychology (certified expert) and asked them what they thought about it and they stated that it looked like a diagnostic tool. In other words, if someone has disability condition x and fills out the form fairly honestly, then the correlation (boxes checked) will suggest disability condition x. Not explained well. However, said another way, if you take that form to an "expert" and ask them what disability do you think the person filling out this form has or a similar question, they will most likely tell you one of two disability conditions (out of over a hundred such as anxiety disorder, depression, narcissistic, delusional disorder, NOS disorder, schizo affective disorder, bi-polar disorder, PTSD, paranoid schizophrenia, obsessive compulsive, phobias, anxiety, asperger's, defiant, panic, dementia disorders, borderline, histrionic, ADD, speech disorder, etc.) There are several hundred different possible disability conditions and "magically" out of those several hundred, one of the two that this form apparently "is a diagnostic tool for" perfectly matches the disability that appears on a noteworthy document. Because the probability of this happening by chance is less than 1%, this raises the inference that I was discriminated against. Ever so arrogantly, P&G received my charge of discrimination and sent me letters stating that they will "participate" in the process and not provide anything "pertinent." Because I wanted the EEOC to conduct a thorough investigation, I sent these to the EEOC. In terms of "proving" discrimination, the file suggests the following (going off memory "in good faith" here):

1. I invited the CEO, A.G. Lafley to attend mediation. P&G declined mediation. P&G attempted to have it "both ways" or apparently stated that they could decide to make the position statement inadmissible because of an offer to compromise or "conduct or statements made in compromise negotiations regarding a claim." That clearly shows that P&G lacks integrity.
2. P&G first stated that my claim should be dismissed (not a valid claim). EEOC indicated that it was a valid claim.
3. P&G then stated that EEOC did not have jurisdiction to investigate. The majority of people are not covered under ADA. If I could not prove that, then the EEOC could not investigate anything.
4. P&G position statement (which usually ends it) looked very suspect to the EEOC. In fact, this statement arguably supports and strengthens some of the documents I provided the EEOC before P&G submitted the statement.
5. EEOC conducts initial investigation (phone screens). Everything that I say is validated.
6. I provided the EEOC enough information to **easily prove** that I was treated less favorably then similarly situated individuals. They **agreed**.
7. Because I was not wrong about **anything**, the EEOC requests 13 affidavits. P&G only submits 3. Of those three, there is not a **single question** that was answered **any** differently from what I **told** the EEOC in writing **before** these people answered questions (please reference memorandum dated September 14th, 2008).
8. P&G Legal attempts to bias the investigator again. Then P&G paralegal submits a memo saying something to the effect of "In your opinion.." suggesting that the investigation should not continue because P&G has apparently never discriminated. In fact, what the paralegal was referring to was an e-mail that I sent to both her and the EEOC after reading and analyzing the very personnel file that she gave to me.
9. Sometime around here I amend my charge (actually the EEOC does it for me) to include gender and other information that was on the intake form. The EEOC words it in a way that suggests P&G did not allow me fair & equitable access to resources, because they were not getting that themselves. Smartly, I cautioned the EEOC in writing because this makes it look like I am "trying to get something."
10. P&G Legal argued that I changed my position or something nonsensical.
11. The Chief Counsel, Marc Krass, Associate General Counsel, declares a "crisis" after an internal investigation suggests that P&G employees lied on affidavits and suggests that I may have been discriminated against.
12. EEOC continues to request affidavits multiple times.
13. I send book to EEOC and P&G Legal over e-mail called *Fly Paper for Freaks*, a book that my marketing specialist wrote about how she slept with several guys.
14. Letter from EEOC suggests that they may have threatened and/or considered a lawsuit, something that suggests that my case has merit. In general, the EEOC only focuses its resources against class action suits.
15. Pretext was tenuous (at that point in time) because a thorough investigation was not conducted, the EEOC somehow lost important information, and the EEOC did not have evidence of a "cover-up" (which they should now have).

All in all, the file suggests that P&G legal pledged to allow a fair & equitable investigation. Then the investigation started and P&G realized that they were "screwed." So they did not allow a fair & equitable investigation to persist. It is my belief that the EEOC now has all of the information necessary to clearly show that I was discriminated against. Accordingly, I respectfully ask that A.G. Lafley, his employees, and his company to not blame and/or defer moral judgment to legal because you lack integrity. "Leadership" should own up to their mistakes and not respond to my accusations by merely referring me to Procter & Gamble lawyers. I believe that blaming the lawyers and suggesting that you and/or your employees cannot get them to behave differently because you have to defer to their expertise is unethical and shows that you lack integrity.

## ANALYSIS OF P&G's POSITION STATEMENT

Exhibit 1. I was treated differently from all other employees because it was Gillette policy to not talk to Delhaize. Many ABM's would argue that responding to requests from Delhaize reflects an inability to prioritize. I responded to the request.

Exhibit 4. Thomas Williams hated doing work. If the EEOC were to obtain my predecessors performance review, they would have strong circumstantial evidence that I more than likely had to do not only my job but aspects of the Display Manager's job and Mr. Williams.

Exhibit 5. Coaching is a euphemism for terminate (as stated above). This e-mail makes comments that are not true. A thorough investigation would show that this e-mail reflects ABM's and BM's leveraging and attempting to bias decision makers whom I had little contact with. Since an investigation would show that this bias turned into adverse action, it should constitute discrimination.

(1) On a letter dated December 15th, 2008, Sabrina Peltier states that I name "no specific comparator" and give "no specific examples of training opportunities or other opportunities provided to someone else and denied him." I provided several examples to the EEOC, most notably being selected by Ben Leachman to go to Arizona (during May), because of my superior performance. My supervisor, Christine McGovern, apparently wanted Sara Filed to go because she appointed her "bundle leader," and when Sara could not attend, she recommended Chris Murphy. I was also denied the opportunity to do training on my training plan such as go to Iowa City and go out to the field with the WMT team.

(2) Ms. Peltier also states that my termination was based on not "delivering results in the workplan given to him." In fact, during the month of May my performance (per above) was praised by several different people. More importantly is the fact that – per scorecard(s) given to the EEOC, created by Chuck Walton, all of my projects (my workplan) were in **green**, because results were either delivered or in the process of being delivered (a lag tends to exist between your actions and results). To produce this scorecard, Chuck was consulting with the SCAEs, fellow AMBs, and other employees. In other words, Ms. McGovern is saying one thing and Chuck (whom she should be consulting with because he would know) is saying something else.

Ms. Peltier also states that there were "three female ABMs" and "three female BMs." Unless something has drastically changed, this is simply not factually correct. For instance, off memory: Andrea Zahumensky, Adrienne Cuschieri, Victoria Stroud, Jocelyn Wong, Kelly Heaps, Stacey Reherman, Amanda Barry, Christina Adams, Sarah Irizarry, Melissa Moynier, Christine McGovern, April Mills, and Sara Field were all either ABMs or BMs when I was in Oral Care, plus potentially some more whose names are not top of mind. At no point in time over the past two years were there close to six.

## SUMMARY OF CLAIMS AND OTHER CONSIDERATIONS

(1) On June 2nd, my supervisor, Christine McGovern, berated me in front of all of the ABMs and BMs in the Oral Care Category. This occurred in the auditorium when she and (everyone except me) were conducting "training." On June 2nd, it became very apparent to everyone that my termination was preplanned well in advance (longer than a month) of June 2nd.

(2) Throughout the months of May and June, I had compiled evidence not only of my performance but also of discrimination. I kept this evidence on my desk. Unfortunately, on June 2nd, I was not permitted to go to my desk area to obtain this information, despite asking repeatedly to have security escort me down. If I would have been permitted to gather this evidence, then I would have had a clear "cause" case with the EEOC. Please reference **Exhibit A**.

(3) Federal law states that it is illegal to "harass employees on the basis of race, color, religion, sex, national origin, disability or age." I was berated in front of fellow employees on several occasions (including a 'mentor session' not covered above) because of a disability. This affected my job performance and caused unnecessary distress. I was harassed. This claim was **not** clearly annotated on a previous EEOC charge.

(4) Federal law states that sexual harassment is illegal. During the month of May, I observed Christine McGovern make what appeared to be unwanted sexual overtures to Cesar Aguilera. I believe what I witnessed constitutes sexual harassment. Likewise, this claim was **not** clearly annotated on a previous EEOC charge.

(5) Federal law states that it is "illegal to discriminate in the classification of employees." The medical history form resulted in me betting "classified" in an unfavorable light, which led to a stigma and/or negative perceptions and associations.

(6) Federal law states that it is illegal to "retaliate [against an individual] for opposing discriminatory practices."

(7) Per previous documentation, I believe that I made "good faith" efforts to clearly communicate a request for accommodation.

Overall, I have several valid claims of discrimination. Two concerns. First, pertinent information to my claim was apparently "lost" when my file transferred from Cincinnati to Indianapolis. Second, because "the company" did not permit me return to my desk area, where pertinent information to my claim was located, I find it extremely unfair that the burden rests on me. Although much of that information was destroyed (such as hand written notes by Christine McGovern and

Andrea Zahumensky), some still exists in "cyberspace." Regardless, it is my belief that the EEOC should have enough information to render a "cause finding," because I have provided them with enough information to show that "the employer's excuse is factually untrue." If, however, the EEOC does not believe this to be the case, then the EEOC should either: (1) because this charge has new claims, process this charge, accordingly; or (2) re-open the investigation for charge #846-2008-43003 and issue a new Right to Sue letter upon completion of the investigation.

I believe I have been discriminated against because of my gender, male, in violation of Title VII of the Civil Rights Act of 1964, as amended; and, because of my disability, record of disability, and/or perceived disability, in violation of the Americans with Disabilities Act.

Disclaimer: This charge is not intended to provide an exhaustive treatment of all evidence that may be available to support the assertions made in this charge, nor is it intended to raise all legal theories or arguments. This charge is being submitted without prejudice to the right of "John Doe" and/or his lawyer to produce additional information, evidence or legal argument concerning any of the facts or issues related to this charge. Accordingly, I expressly reserve the right to revise, correct, add to, supplement, or clarify any of the information, evidence, or legal theories or analysis in this charge of discrimination if and when I have access to information that is currently controlled by P&G. Finally, it is my understanding that any discussions conducted on my behalf with P&G will be conducted in the hypothetical.

CC: The Board of P&G, Senator Brown, Senator Lugar, President of The United States, Circuit Courts

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 13 March 09 [signature] <br> Date / Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |